## Case No. 13,978.

### THOMPSON v. TOD.

[Pet. C. C. 380.] [1]

Circuit Court, D. Pennsylvania. April Term, 1817.

SPECIFIC PERFORMANCE — COMPLAINANT'S UNFAIR CONDUCT — REPRESENTATIONS — STATUTE OF FRAUDS—PART PERFORMANCE—PLEADING—EFFECT OF ADMISSIONS IN ANSWER.

1. Bill in equity for the specific performance of a parol agreement. If the agreement admitted by the answer differs from that stated in the bill, the plaintiff cannot have a decree, unless he can prove the contract aliunde.

[Cited in Baker v. Biddle, Case No. 764; Tilghman v. Tilghman, Id., 14,045; Keene v. Wheatley, Id. 7,644.]

2. Under what circumstances, equity will refuse to decree a specific performance.

3. A court of equity will not compel the specific performance of a parol agreement to convey lands, in a case in which he who asks the assistance of the court, is charged with unfair conduct in relation to the contract which he seeks to enforce; but will turn the party away from that forum, and leave him to his legal remedy.

[Cited in Rutland Marble Co. v. Ripley, 10 Wall. (77 U. S.) 358.]

4. The same construction must be given, and the same consequences will follow from verbal representations, made at the time of a parol agreement, as, had they been inserted in a written agreement, a court of equity would assign to them.

5. In a suit for a specific performance of a parol agreement to convey lands, although the defendant answer and admit the agreement, he may, nevertheless, protect himself against a performance of it, by pleading the statute of frauds.

6. Part performance has no other effect, except that the plaintiff is thereby let in to prove the agreement aliunde, where it is not confessed.

[7. Cited in Ayer v Hawkes, 11 N. H. 153, and in Kidder v. Barr. 35 N. H. 255, to the point that a payment of a substantial part of the purchase money is a part performance sufficient to take the case out of the statute.]

[1] [Reported by Richard Peters, Jr., Esq.]

This case was argued at the last term, and was kept under advisement, until the present term, when the following opinion was delivered:

WASHINGTON, Circuit Justice. The object of this bill is to obtain the specific performance of a parol agreement, entered into between the complainant and the defendant, on or about the 24th of July, 1786, for the conveyance of a tract of land, called "Peachblossom Farm," in the state of New Jersey. It appears by the allegations in the bill and the acknowledgments in the answer, that on the 16th of December, 1785, a written agreement was entered into between the defendant and one Henry C. Baker; by which the defendant bound himself to sell to Baker, this farm, containing about 750 acres, for the price of £8 per acre, to be paid in the following manner, viz: £250 on the 25th of December in the same year; £1.250 on the 1st of March, 1786, when Baker was to receive possession; £1,000 on the 1st of March, 1787, when a conveyance was to have been made; and £1,000 on the 1st of March, 1788. All the above sums were to be without interest, until after the respective periods when the payments were to be made. The residue of the purchase money was to be paid in annual instalments, of 1,000 dollars on the 1st of March in the succeeding years, and for securing the same, Baker was to give a mortgage on the farm. The answer admits, that between the time of making the said agreement, and the 25th of March, 1786, Baker paid to the defendant at different periods, in part performance, the sum of £931 1s. 9d. On the 25th of March, 1786, Baker and the complainant entered into written articles, by which Baker agreed to sell this farm to the complainant, and to make a conveyance of the same on the 10th day of the succeeding month. The consideration was to be certain real property in Maryland, New Jersey, and Virginia, a house and lot in the northern liberties of the city of Philadelphia, and bonds and notes for £1,000 which, in the opinion of one or more competent judges, should be deemed to be good. On the 14th of June, 1786, a third contract in writing was entered into, between Baker, the complainant, and the defendant, whereby it was agreed, that the complainant should pay to the defendant, by way of an advance on the part of Baker, the sum of £1,950 on the 20th day of the succeeding month, on which day, the defendant was to convey Peachblossom farm to the complainant; and to enable Baker to secure the defendant as to the residue of the purchase money, agreeably to the contract of the 16th of December, 1785, the complainant was at the same time to convey to Baker, the real property mentioned in the contract of the 25th of March, 1786, with a slight variation, and also to deliver to him bonds and notes, such as competent judges should pronounce to be good, to the amount of £600 as also a bond of

Francis Baker for £3,500; all which property was to be conveyed and assigned by Baker to the defendant, for the purposes aforesaid. It was further stipulated, that this last agreement should not affect the two former agreements, but that they were to remain in full force if this agreement should not be complied with by all the parties to it. The complainant admits in his bill, that he was unable to pay the £1,950 on the 20th of July, in consequence of which, he alleges the contract of the 14th of June became of no effect, and was so declared by the parol agreement which this bill seeks to enforce. It would seen, nevertheless, that with the above variation the parties to the agreement of the 14th of June prepared themselves to fulfil the same; as it appears, that the bonds and notes for £1,000, were assigned by the complainant to Baker, prior to the 20th of July, 1786, and that deeds were executed by him for the real property mentioned in the said agreement, which deeds bear date on the said 20th of July, as does also a deed from the defendant to the complainant. No delivery however was made of this latter deed, in consequence no doubt of the inability of the complainant to perform his part of the contract.

We are now brought to the parol contract which has given rise to this controversy, and which is the sole basis of it. The complainant states in his bill, that it was entered into on or about the 24th of July, 1786, and was to the following effect: First, that the articles of the 14th of June should be cancelled; second, that the defendant should execute a conveyance of the Peachblossom farm to the complainant; third, that the complainant should pay the defendant £100 in cash, give a mortgage on the said farm with a judgment bond for the payment of £600 in twelve months, give his own bond for £850 payable on the 25th of March following, and his four promissory notes for £100 each, payable in 90 days, amounting in the whole to the sum of £1,950, which by the articles of the 14th of June was to have been paid on the 20th of July following. Of this contract the complainant has produced no proof, but relies upon the acknowledgments contained in the answer to establish it. It remains therefore to inquire, whether the contract stated in the bill is admitted in the answer. The answer denies in general but positive terms, that this agreement was entered into. But, being called upon to state what was the agreement, if the same should not be truly set forth in the bill, the defendant admits that on some day near the end of July, or the beginning of August, 1786, a verbal agreement was concluded between the complainant, Henry C. Baker and himself, whereby it was stipulated that the articles of the 14th of June should be cancelled, and that all acts done in part performance of the same should be of no effect; —that the complainant should pay to the defendant £100 in cash—give his bond for £850 payable on the 25th of March, 1787—his four notes for £100 each, payable ninety days after date, and his bond for £600 payable on the 20th of July, 1787, to be secured by a mortgage on Peachblossom farm, after the complainant should obtain a title for the same. The answer further states, that the complainant engaged that Baker should mortgage to the defendant the real estate mentioned in the agreement of the 25th of March, 1786, and should assign to him the bonds and notes of sundry persons in New Jersey, to the amount of £1,000, all which was to secure to the defendant the payment of the residue of the purchase money for the aforesaid farm, with interest, at the price of £8 an acre, at the periods and on the terms mentioned in Baker's bond, dated the 20th of July, 1786. Now, if this answer amounts to a substantial admission of the contract alleged in the bill, it must be conceded that the general denial of that contract will go for nothing. But it is most apparent, that the contract alleged and the one admitted vary from each other in this essential particular, that the former, were a performance of it to be decreed, would leave the defendant without any security but the personal responsibility of Baker for the payment of the balance of the purchase money. The security provided by the articles between Baker and the defendant of the 16th of December, 1785, was a mortgage of the Peachblossom farm, which Baker could not give, if, according to the parol agreement, the defendant was to convey that farm at once to the complainant. According to this agreement no other security was substituted, and the complainant would be exposed to no responsibility, if Baker should refuse to mortgage to the defendant the property which the complainant had bound himself to convey to him by their contract of the 25th of March, 1786. The defendant on the contrary asserts, that the complainant undertook that Baker should give him a security upon that property for the performance of his contract of the 16th of December, 1785, and that upon the performance of these acts by the complainant, and by Baker, the defendant was to convey the farm.

There is another difference between the two contracts, not less material than that just noticed. The answer states, that the real property to be conveyed to him by Baker to secure the residue of the purchase money, was represented by the complainant to be of a certain value, that the title to the same was unexceptionable, and as to the bonds and notes, that he would assign the same to Baker, so as to enable him to recover the sums expressed in them. The bill takes no notice of this engagement, important as it certainly was to the security of the defendant. It was contended by the plaintiff's counsel, that these assurances if untrue amounted to nothing more than misrepresentations, and ought not to be con-

sidered as forming part of the contract. But if they amounted to misrepresentations, an abundant reason would be thereby afforded for refusing the aid of this court to carry that contract into specific execution. A court of equity will never exert this extraordinary branch of its jurisdiction, in a case where the party who asks its assistance, is chargeable with unfair conduct in relation to the contract which he seeks to enforce, but will turn him away from that forum, and leave him to his legal remedy. But, I can by no means agree that these representations, made at the time when the agreement was forming, were no part of that agreement. If the contract had been reduced to writing, it surely would not be contended that such statements, being inserted in it, would not have amounted to covenants on the part of the complainant which a court of equity would require to be fulfilled. If so, the same construction must be given, and the same consequences will follow, when they accompany a verbal contract which is sought to be enforced. If, then, the contract alleged in the bill is neither proved nor admitted, it is impossible that a specific performance of it can be decreed. But, if the contract were admitted as it is stated in the bill, there are other insuperable objections to the complainant's success. It appears, by the evidence, that the property which was to be conveyed to the defendant to secure the payment of the residue of the purchase money, was totally insufficient for that purpose; and the circumstances attending it, which are in proof, justify the imputation of unfairness in the conduct both of Baker and of the complainant. The house and lot, for instance, in the Northern Liberties of Philadelphia, were encumbered with arrearages of rents to their full value. The bonds and notes, or most of them, were disputed, if not altogether irrecoverable; and the Virginia lands, amounting in quantity to upwards of 20,000 acres, which formed the bulk of the property, are proved to have been barren, unfit for cultivation, and of very little value. A knowledge of all these facts is fairly chargeable upon the complainant, from the correspondence between him and Richard Mason, his partner and agent, which appears amongst the exhibits. But, admit that the security to which the defendant was entitled, had been adequate, what evidence has the complainant given of performance on his part or an offer to perform? He states in his bill, that immediately after the parol agreement was concluded, he sealed and delivered the mortgage and bond for £600—paid the £100, and executed his obligation for £850, which mortgage and bonds, together with his four notes for £100 each, he left with A. Humphreys, the mutual agent of the complainant and the defendant. That, in the evening of the same day, he executed

conveyances to Baker for all the property mentioned in the contract of the 25th of March, and that Baker, at the same time executed a mortgage deed of the said property to the defendant agreeably to the contract between him and the defendant and delivered the same to the defendant. That the complainant also delivered to the defendant bonds and notes to the amount of £1,000, which the defendant selected from many others, after several weeks' deliberation and inquiry, agreeing to take the same at his own risk.

These allegations are unsupported by any evidence in the cause, and, if not altogether denied in the answer, are not admitted. In respect to them, the answer states, that soon after the contract was entered into, the defendant discovered that the whole transaction was a gross fraud concerted between the complainant and Baker, who at that time was insolvent, to deprive the defendant of his farm; in consequence of which, he refused to deliver the deed for the same, which he had previously executed. He further denies that Humphreys was his agent, and asserts, that the conveyances by the complainant to Baker of a great part of the real property, were defective, and that no conveyance of the same by way of mortgage, was made or tendered to the defendant by Baker, according to the stipulations of the parol agreement;—and finally, that even the conveyances from the complainant to Baker, and the assignment of the bonds and notes, were made, not under the parol agreement, but under the written contract of the 14th of June. This latter allegation, if it required to be supported by proof, is strongly confirmed by the dates of the conveyances and assignments, all of which precede the day fixed by both the complainant and the defendant, as that on which the parol agreement was made. Not only is there an absence of all proof that the complainant has ever offered to perform this contract, but, it appears from the action of covenant which he instituted against the defendant, in the same year that that contract was entered into, that he had determined to abandon it altogether, and to rely upon the written articles of the 14th of June. From the time that suit was brought, until the year 1811, when this was instituted, the defendant has been permitted to remain in the quiet and undisturbed possession of his farm, and to expend his money and labour upon its improvement, without a whisper of dissatisfaction from the complainant, so far as appears in this cause. In consequence of these improvements, and the extraordinary appreciation in the value of real property generally, this estate, which was agreed to be sold in 1786, for £8 an acre, is now worth eighty dollars. And, under all the above circumstances, ought a court of equity to compel the defendant to

convey this estate to the complainant, and receive in return, next to nothing? Such a decree, I confidently believe, would be without a solitary precedent to give it countenance.

I shall add a very few words as to the plea of the statute of frauds, which I think is a complete defence against the prayer of this bill. That an opinion at one time prevailed, that on a suit for the specific execution of a parol agreement for the sale of land, the defendant must either confess or deny the agreement, and that, in the former case, the plea of the statute of frauds would be unavailing, is not less true than strange. But this doctrine has been repeatedly overruled (Coop. Eq. Pl. 256, 257; 2 H. Bl. 63; 2 Brown, Ch. 563; 4 Ves. 23; 6 Ves. 543), and it is now the settled rule of the court, that although the defendant should answer and admit the agreement as stated in the bill, he may nevertheless protect himself against a performance, by pleading the statute. But even the condemned doctrine would not avail the complainant, since the contract alleged in the bill, is neither admitted nor proved.

It is contended, however, that the statute is no protection where the contract has been in part performed. Now there are two insuperable answers to that argument, as applied to this case. The first is, that part performance can have no other effect than to let the plaintiff in to prove the contract aliunde, where it is not confessed; but, in this case, no such proof has been given, and, it must be admitted, that if the contract be neither admitted nor proved, performance cannot be decreed. The next answer is, that although it should be admitted that under all the circumstances of this case, the payment of a part of the purchase money will amount to a part performance, still it should appear, beyond all reasonable doubt, that the payment was understood by the parties to have been so made and intended. Now, in this case, the payment of the £100 is not proved nor admitted to have been made in part performance of the verbal contract. To say the most in its favour, it is doubtful whether it was made with a view to that contract, or to the contract of the 14th of June, and this doubt is of itself, a sufficient answer to the argument. But, I think there are stronger reasons for presuming the latter than the former. For, since it is clear that the conveyances by the complainant to Baker, and by Baker to the defendant, and the assignment of the bonds and notes, were done in part execution of the written agreement, it is highly probable that this money was paid on the 20th of July, as the defendant states the fact to the best of his recollection, in part of the £1,950 agreed to be paid on that day. Upon the whole, I am of opinion that the plaintiff is not entitled to the relief which he has specifically prayed for.

The only remaining question is, whether the complainant is entitled to any other and what relief? He claims a decree for the money paid to the defendant by H. C. Baker, under his contract of the 16th of December, 1785, and also for the £100 paid by the complainant, with interest upon those sums. The first is altogether inadmissible, as it is not pretended that the money paid by Baker, belonged to the complainant; and if it did, still the court could not decide that fact in this cause to which Baker's representatives are no parties. As to the £100 paid by the complainant, he is entitled to a decree for that sum, with interest from the 20th of July, 1786, but without costs.

THOMPSON (TOLMIE v.). See Case No. 14,080.

THOMPSON (TOOKER v.). See Case No. 14,097.

THOMPSON (UNITED STATES v.). See Cases Nos. 16,484–16,492.

THOMPSON (VALARINO v.). See Case No. 16,810a.